UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE NORTHERN ASSURANCE COMPANY
OF AMERICA, a foreign corporation,

                    Plaintiff,

v.                                                          Case No.: 8:10-CV-01869-JDW-MAP

CUSTOM DOCKS BY SEAMASTER, INC.,
a Florida corporation; HARBOR BAY
COMMUNITY DEVELOPMENT DISTRICT,
a Florida development district; and WOODRUFF
& SONS, INC., a foreign corporation,

                    Defendants.
_____/

## DEFENDANT/COUNTERCLAIM PLAINTFF, WOODRUFF & SONS, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

The Defendant/Counterclaim Plaintiff, WOODRUFF & SONS, INC. (Woodruff), through undersigned counsel and pursuant to *Fed.R.Civ.P.* 8, 12 and 13, files DEFENDANT/COUNTERCLAIM PLAINTIFF, WOODRUFF & SONS, INC.'S ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM (the Answer), and states:

## ANSWER

Woodruff, in corresponding numbered paragraphs, provides the following Answer to the Northern Insurance Company of America's (NACA) Complaint for Declaratory Judgment:

## JURISDICTION AND VENUE

1.     In accordance with and to the extent required by this Court's January 12, 2011 ORDER [DE22], Woodruff admits these allegations for the purpose of establishing this Court's

1

jurisdiction and venue for the present dispute.   Woodruff specifically admits this Court's jurisdiction to adjudicate NACA's "duty of defense" owed to the insureds identified in THE NORTHERN ASSURANCE COMPANY OF AMERICA POLICY No.: N5JH22633 (hereinafter the NACA Policy), a purported copy of which has been attached as Composite Exhibit A to NACA'S COMPLAINT FOR DECLARATORY JUDGMENT (NACA's Complaint), the terms of which are incorporated herein by reference.

2.     See response to Paragraph No. 1 herein; otherwise, denied.

3.      See response to Paragraph No. 1 herein; otherwise, without specific knowledge thereof, and thus, denied.

4.     See response to Paragraph No. 1 herein; otherwise, without specific knowledge thereof, and thus, denied.

5.     Woodruff admits only that Co-Defendant, HARBOR BAY COMMUNITY DEVELOPMENT DISTRICT (Harbor Bay) filed that certain THIRD AMENDED COMPLAINT against, among others, Woodruff in that certain action styled *Harbor Bay Community Development District, Plaintiff, v. Woodruff & Sons, Inc., et. al., Defendants*, Case No.: 07-CA-015263 in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida (hereinafter the Underlying Lawsuit), a true and correct copy of which (with Exhibits) is attached hereto as Composite Exhibit "1" and is incorporated herein by reference; otherwise, denied.

6.     Admitted that the terms and provisions of the pleadings filed in the Underlying Lawsuit are the best evidence of what those pleadings, in fact, state; otherwise, denied.

2

## FACTUAL ALLEGATIONS

7.      Admitted that the terms and provisions of the NACA Policy is the best evidence of those insurance contract provisions, and, in addition, those persons/entities insured thereunder; otherwise, denied.

8.      See response to Paragraph No.7 herein.

9.      See response to Paragraph No. 7 herein.

10.     Admitted that the provisions contained within the Third Amended Complaint (with attachments) in the Underlying Lawsuit are the best evidence of those pertinent allegations at issue in that action as of September 2008; otherwise, denied.

11.     See response to Paragraph No. 10 herein.

12.     See response to Paragraph No. 10 herein.

13.     See response to Paragraph No. 7 herein.

14.     Given this Court's rulings in its January 12, 2011 ORDER [DE 22] as it concerns the "duty of defense" issue, Woodruff denies these allegations.

15.     Without specific knowledge thereof, and, therefore, denied.

16.     See response to Paragraph No. 15 herein.

17.     See response to Paragraph No. 14 herein.

18.     See response to Paragraph Nos. 6 and 15 herein.

## FIRST CAUSE OF ACTION

19.     Woodruff incorporates herein by reference each of its responses to Paragraph Nos. 7 through 18 herein.

20.     See response to Paragraph No. 7 herein.

3

21.    See response to Paragraph No. 14 herein.

22.    See response to Paragraph No. 14 herein.

23.    Admitted that NACA has the duty to defend Custom Docks By Seamaster, Inc.

(Seamaster) in the Underlying Lawsuit; otherwise, without specific knowledge thereof, and, thus,

denied.

24.    Denied.

25.    See response to Paragraph No. 1 herein.

## SECOND CAUSE OF ACTION

26.    See response to Paragraph No. 19 herein.

27.    See response to Paragraph Nos. 7 and 10 herein; otherwise, denied.

28.    See response to Paragraph No. 7 herein.

29.    See response to Paragraph No. 1 herein; otherwise, denied.

30.    See response to Paragraph No. 1 herein.

## THIRD CAUSE OF ACTION

31.    See response to Paragraph No. 19 herein.

32.    See response to Paragraph No. 10 herein.

33.    See response to Paragraph No. 7 herein.

34.    See response to Paragraph No. 1 herein; otherwise, denied.

35.    See response to Paragraph No. 1 herein; otherwise, denied.

36.    See response to Paragraph No. 1 herein; otherwise, denied.

## FOURTH CAUSE OF ACTION

37.     See response to Paragraph No. 19 herein.

38.     See response to Paragraph No. 7 herein.

39.     See response to Paragraph Nos. 7 and 10 herein; otherwise, denied.

40.     See response to Paragraph No. 1; otherwise, denied.

41.     See response to Paragraph No. 1; otherwise, denied.

## DEMAND FOR JURY TRIAL

To the extent that NACA's Complaint raises disputed and material questions of fact, Woodruff hereby demands trial by Jury on all issues so triable.

## AFFIRMATIVE DEFENSES

Woodruff hereby raises the following Affirmative Defenses to NACA's Complaint for Declaratory Judgment, and states:

1.      NACA's FIRST through FOURTH Causes of Action fail to state a cause of action upon which relief may be granted, and, thus, NACA's Complaint fails as a matter of law.

2.      NACA is estopped from denying liability insurance coverage to any of those persons/entities insured under the NACA Policy for the incident(s) sued upon in the Underlying Lawsuit, as NACA's conduct has been inconsistent with its position of "no coverage".

3.      NACA has waived its right to deny liability insurance coverage to any of those persons/entities insured under the NACA Policy for the incident(s) sued upon in the Underlying Lawsuit, as NACA's conduct has been inconsistent with its position of "no coverage".

4.      Each entity/person insured under the NACA Policy for the incident(s) sued upon in the Underlying Lawsuit has satisfied all stated "conditions precedent" to liability insurance

5

coverage under the NACA Policy and/or NACA has otherwise waived compliance with the same. To the extent that NACA raises a stated "condition precedent" as a bar to coverage, such defense fails as a matter of law because it has not adequately pleaded the same and/or cannot otherwise demonstrate "substantial prejudice" as required by Florida law.

5.      Because a Florida liability insurer's "duty of defense" is broader than the "duty to indemnify", the *allegations* at issue in the Underlying Lawsuit govern the existing insurance coverage dispute before this Court; the *actual facts* established in the Underlying Lawsuit are inapposite to the Parties insurance coverage dispute.

6.      To the extent that the THIRD AMENDED COMPLAINT (or any other subsequently filed complaint in the Underlying Lawsuit) is amended or changed, NACA's Complaint would then be moot, and, thus, fail as a matter of law.

7.      The underlying incident(s), as alleged in the Underlying Lawsuit, trigger the NACA Policy's liability insuring agreement, and are not otherwise wholly excepted/excluded from coverage.

8.      Each of the NACA Policy exceptions/exclusions cited in its Complaint is vague and ambiguous, as worded and/or as applied to the particular allegations at issue in this case, and, therefore, is inapplicable as a matter of law.

9.      To the extent that NACA failed to comply with the requirements of §627.426 *Fla. Stat.* in challenging any insured's right to liability insurance coverage in this matter, NACA is precluded from denying liability insurance coverage in this instance.

WHEREFORE, Woodruff requests this Court's dismissal of NACA's Complaint in this matter, the entry of a judgment in its favor, and to the extent permitted under Florida Law, an

award of attorney's fees and costs in this matter. Woodruff further requests all other relief that this Court deems just and appropriate.

## COUNTERCLAIM

The Defendant/Counterclaim Plaintiff, WOODRUFF & SONS, INC. (Woodruff), through undersigned counsel and pursuant to *Fed.R.Civ.P.* 13, sues the Plaintiff/Counterclaim Defendant, the Northern Assurance Company of America (NACA), and states:

## JURISDICTION AND VENUE

1.      This is a civil action for insurance contract benefits and concerns the Parties' dispute over matters of insurance coverage[1], the subject matter of which involves an amount in controversy that satisfies the jurisdictional requirements of this Court and/or is otherwise within this Court's jurisdiction.

2.      This action has been brought in the proper venue, as it arises from an insurance coverage dispute that involves Woodruff and NACA within the Middle District of Florida.

3.      At all times material hereto, Woodruff was a foreign corporation authorized to transact business within the state of Florida, including, but not limited to, Florida's Middle District.

4.      At all material times hereto, NACA was a corporation authorized to conduct the business of insurance within the State of Florida, including, but not limited to, Florida's Middle District.

---

[1] In bringing this action, Woodruff is cognizant of and agrees to abide by this Court's January 12, 2011 Order [DE 22], which limits this litigation solely to the "duty of defense" issue identified in this Court's Order. Woodruff files this action for defense and indemnification only to ensure completeness, and hereby agrees and stipulates that with the exception of this "duty of defense" issue, Woodruff will agree to stay any further litigation raised in its Counterclaim.

## GENERAL ALLEGATIONS

5.     Woodruff is currently a party in other pending litigation in Florida state court, specifically, that certain action styled *Harbor Bay Community Development District, Plaintiff, v. Woodruff & Sons, Inc., et. al., Defendants*, Case No.: 07-CA-015263 and which is currently pending in the Circuit Court in and for Hillsborough County, Florida (hereinafter referred to as the "Underlying Lawsuit" or "Underlying Complaint"). Woodruff attaches hereto as Composite Exhibit "1" what it believes to be a true and correct copy of the latest Underlying Complaint at issue in the Underlying Litigation, the Third Amended Complaint (certificate of service date September 22, 2008). Woodruff incorporates herein Composite Exhibit "1" in its entirety, not for the purpose of admitting the truth of the allegations contained therein, but, rather, to merely establish the nature and substance of the allegations themselves.

6.     Woodruff also attaches hereto as Composite Exhibit "2" a true and correct copy of the Second Amended Complaint (certificate of service date February 27, 2008) filed in the Underlying Lawsuit by Harbor Bay Community Development District (Harbor Bay) against, among others, Woodruff. Woodruff incorporates herein by reference those allegations contained within Composite Exhibit "2" (without attached exhibits) in their entirety, not for the purpose of admitting the truth of the allegations contained therein, but, rather, to merely establish the nature and substance of the allegations themselves.

7.     NACA issued the NORTHERN ASSURANCE COMPANY OF AMERICA POLICY No.: N5JH2263 (the NACA Policy), which was in effect from August 23, 2005 through August 23, 2006. The Policy affords, among other types of coverage, "property damage" liability coverage on an "occurrence" basis. Based upon information and belief, a true and

correct copy of the NACA Policy is attached as Composite Exhibit A to NACA's Complaint for

Declaratory Judgment, the terms of which are incorporated herein by reference.   The NACA

Policy provides in pertinent part:

> SECTION I- COVERAGES
> COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE
> LIABILITY
>
> Insuring Agreement
>
> 1. We will pay those sums that the insured becomes legally obligated to
> pay as compensatory damages because of "bodily injury" or "property
> damage" to which this insurance applies.  We will have the right and
> duty to defend any "suit" seeking those damages.  However, we will
> have no duty to defend the insured against any "suit" seeking
> damages for "bodily injury" or "property damage" to which this
> insurance does not apply.  We may at our discretion investigate any
> "occurrence" and settle any claim or "suit" that may result.  But:
>
>> a. The amount we will pay for damages is limited as described in
>> LIMITS OF INSURANCE (SECTION V); and
>>
>> b. Our right and duty to defend end when we have used up the
>> applicable limit of insurance in the payment of judgment or
>> settlements under Coverage A or B or medical expenses under
>> Coverage C and/or Supplementary Payments under Section III.
>>
>> No other obligation or liability to pay sums or perform acts or
>> services is covered unless explicitly provided for under
>> SUPPLEMENTARY PAYMENTS COVERAGES A AND B
>> (SECTION III).
>
> 2. This insurance applies to "bodily injury" and "property damage" only
> if:
>
>> a. The "bodily injury" or "property damage" is caused by an
>> "occurrence" that takes place in the "coverage territory"; and
>>
>> b. The "bodily injury" or "property damage" occurs during the
>> policy period ...
>
> SECTION IX-DEFINITIONS
>
> 9. "Insured contract" means:
>
>> a. A lease of premises;

9

b. A sidetrack agreement;

c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An "insured contract" does not include that part of any contract or agreement:

(1)    That indemnifies any person or organization for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

(2)    That indemnifies an architect, engineer or surveyor for injury or damage arising out of:
    (a)    Preparing, approving or failing to prepare or approve, maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

    (b)    Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3)    Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services; or

    That indemnifies any person or organization for damage by fire to premises rented or loaned to you.

Nothing contained in an "insured contract" shall serve to increase the coverage or limit otherwise provided by this policy or its endorsements...

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions...

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

21. "Suit" means a civil proceeding in which damage because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute proceedings in which such damages are claimed and to which you submit with our consent...

ADDITIONAL INSURED AND WAIVER OF SUBROGATION ENDORSEMENT (BLANKET)

This endorsement modifies coverage provided under the Comprehensive Marine Liability Coverage Form. Please read it carefully.

Premium: **$500.00**

In consideration of the additional premium shown above, and subject to the terms and conditions of the policy, it is agreed that:

1. Section IV, of the policy (Who is an Insured) is amended to include any person or organization that you are obligated by an "insured contract" to include as Additional Insureds, but only with respect to liability arising out of "your work."

2. It is further agreed that we waive any right of recovery we may have against any such Additional Insured because of payments we make for "bodily injury" or "property damage" arising out of "your work" for that Additional Insured, but only to the extent of your obligation under the "insured contract".

11

All Other Terms and Conditions Remain Unchanged.

8.     At all times material hereto, Woodruff was a party to that certain August 30, 2001 Subcontract Agreement with NACA's "Named Insured", Seamaster (hereinafter the Woodruff/Seamaster Contract).   The Woodruff/Seamaster Contract concerns the construction project at issue in the Underlying Complaint, a true and correct copy of which is attached hereto as Composite Exhibit "3".   At all times material hereto, the Woodruff/Seamaster Contract was an "insured contract", as defined in the NACA Policy.

9.     At all times material hereto, and by virtue of the Woodruff/Seamaster Contract, Woodruff enjoyed "insured" status under the NACA Policy.

10.     Subsequent to the inception of the Underlying Lawsuit, Woodruff tendered those complaints at issue in the Underlying Lawsuit (and in which Woodruff was otherwise named as a party defendant) to representatives of NACA's "Named Insured" and NACA for a defense/indemnification.   True and correct copies of Woodruff's tender letters (without attachments) are attached hereto as Composite Exhibit "4", the terms of which are incorporated herein by reference.

11.     In tendering the Underlying Complaints to NACA's "Named Insured" and NACA, Woodruff timely complied with the NACA Policy's notification requirements and otherwise satisfied all stated "conditions precedent" to coverage under the NACA Policy.

12.     Subsequent to Woodruff's request for a defense and indemnification from NACA and/or NACA's "Named Insured" in the Underlying Lawsuit, NACA provided no response to the request.   NACA's failure to address Woodruff's tender is tantamount to a denial of liability insurance coverage in this matter.

12

13.     Those allegations at issue in the Underlying Lawsuit constitute allegations of "property damage" caused by an "occurrence" within the NACA Policy period; such allegations, therefore, trigger the NACA Policy's "insuring agreement". Moreover, such allegations are not otherwise wholly within any other stated exceptions or exclusions to the NACA Policy.

14.     In light of the Underlying Complaint allegations, and in accordance with the terms and conditions of the NACA Policy and the Woodruff/Seamaster Contract, NACA had a duty to afford Woodruff with a defense against Harbor Bay's claims.

15.     Prior to the institution of this action, Woodruff performed and/or otherwise satisfied all of those matters and things required of it under the NACA Policy, including the satisfaction of all stated "conditions precedent" thereunder, or, alternatively, has been excused from performance of the same by NACA's acts, representations and/or conduct.

16.     As a result of NACA's actions, including, but not limited to, its failure to afford Woodruff with a defense against those allegations at issue in the Underlying Lawsuit, Woodruff has appropriately incurred and become obligated to pay attorney's fees and costs in prosecuting this claim for insurance coverage, including the relief requested herein. Pursuant to §627.428 *Fla. Stat.*, Woodruff is entitled to reimbursement from NACA for those attorney's fees and costs incurred in prosecuting this claim for insurance coverage.

## COUNT I: BREACH OF CONTRACT

17.     Woodruff re-alleges and incorporates herein by reference Paragraph Nos. 1 through 16 herein.

18.     This is an action for damages resulting from NACA's breach of the NACA Policy, including, but not limited to, its failure to defend Woodruff against those alleged damages claimed by Harbor Bay in the Underlying Lawsuit.

19.     Pursuant to the terms and provisions in the NACA Policy, NACA has a duty to defend Woodruff against the allegations at issue in the Underlying Lawsuit, and, further, a duty to indemnify it for any damages that may be assessed against it as a result of Harbor Bay's claim.

20.     NACA's tantamount refusal to afford Woodruff those liability coverage benefits due under the NACA Policy, and, in particular, a defense against those allegations at issue in the Underlying Lawsuit, constitutes a wrongful breach of the NACA Policy.

21.     As a result of NACA's breach of the NACA Policy, Woodruff has been monetarily damaged, including, but not limited to, its incurred attorney's fees and costs in both the Underlying Lawsuit and this matter.

WHEREFORE, Woodruff requests the entry of a Final Judgment against NACA, wherein Woodruff is awarded its compensatory damages, taxable costs, pre-judgment interest, attorney's fees and costs, and all other relief that this Court deems just and appropriate.  Woodruff further demands a jury trial on all issues so triable.

## COUNT II: DECLARATORY JUDGMENT

22.     Woodruff re-alleges and incorporates herein by reference Paragraph Nos. 1 through 16 herein.

23.     This is an action for Declaratory Judgment pursuant to Title 28 of the United States Code, §2201 *et. seq.*

24.     There exists an ongoing and justicable dispute between Woodruff and NACA as to whether there is any duty of defense/indemnification owed by NACA to Woodruff for the incident(s) sued upon in the Underlying Lawsuit.

25.     In accordance with the Declaratory Judgment Act, Woodruff avers that it has genuine concerns and questions about the propriety of NACA's failure to afford liability

insurance coverage to its insureds, including NACA's duties and responsibilities under the NACA Policy, and, thus, it is seeking from this Court a judicial declaration of those duties and responsibilities.

26.     Woodruff respectfully submits that those claims giving rise to the Underlying Lawsuit (including the damages demanded therein) are covered events under the Policy, including, but not limited to, the Policy provisions referenced herein.

WHEREFORE, Woodruff requests that this Court enter a Declaratory Judgment finding that the NACA Policy affords liability insurance coverage, including a "duty of defense" to the insured(s) thereunder with respect to those damages claimed by Harbor Bay in the Underlying Lawsuit. Woodruff further requests such other relief as this Court deems just and appropriate, including an award of its attorney's fees and costs in having to prosecute this action.

Respectfully submitted,

**VAKA LAW GROUP, P.L.**

/S/ GREGORY L. EVANS_____
Gregory L. Evans, Esquire
Florida Bar No.:0767824

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of January, 2011, I have filed the foregoing document with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing via email to:

Allen von Spiegelfeld, Esquire
Banker Lopez Gassler, P.A.
501 E. Kennedy Blvd., Ste. 1500
Tampa, FL 33602
avonsp@bankerlopez.com

Brian Bolves, Esquire
Steven R. Medendorp, Esquire
Bricklemyer, Smolker & Bolves, P.A.
500 E. Kennedy Blvd., Ste. 200
Tampa, FL 33602
adamw@bsbfirm.com
stevenm@bsbfirm.com

      _/s/ GEORGE A. VAKA_____
      George A. Vaka, Esquire
      Florida Bar No.: 374016
      Gregory L. Evans, Esquire
      Florida Bar No.:0767824
      **VAKA LAW GROUP, P.L.**
      777 S. Harbour Island Blvd., Suite 300
      Tampa, Florida 33602
      Phone: (813) 549-1799
      Fax: (813) 549-1780